## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUAN DAVALOS-PONCE,

      Plaintiff,

  v.                                      Civil No. 13-CV-836 RB/CG
                                                    Criminal No. 12-CR-3033 RB

UNITED STATES OF AMERICA,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court upon Juan Davolos-Ponce's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, (CV Doc. 1)[1], and *Memorandum of Law In Support of Motion Pursuant to 28 U.S.C. § 2255*, (CV Doc. 2), filed September 3, 2013, and collectively referred to as the Motion; *United States' Response to Defendant/Movant's Motion to Vacate, Set Aside or Correct a Sentence Under 28 U.S.C. § 2255* ("Response"), filed December 9, 2013, (CV Doc. 7); and *Petitioner's Reply to United State's* [sic] *Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant  to 28 U.S.C. § 2255* ("Reply"), filed March 25, 2014, (CV Doc. 14).

Movant alleges that the district court breached the plea agreement, that the district court violated the Federal Rules of Criminal Procedure when a visiting judge was assigned to his case for sentencing, and that he received ineffective assistance of counsel before the district court when his attorney failed to object to his sentence and the alleged errors of the district court.  (CV Doc. 1).  In his Reply, he also asserts that he

---

[1] Documents references as "CV Doc. ___" are from case number 13-cv-552 MV/CG; those referenced "CR Doc. ___" are from case number 12-cr-829 MV.

received ineffective assistance of counsel in the negotiation of his plea agreement.  (CV Doc. 14).  All of the issues can be resolved on the record and, therefore, an evidentiary hearing is unnecessary.  *See, e.g., United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996).

## I.    Background

On November 28, 2012, Movant was charged with Reentry of a Removed Alien. (CR Doc. 12).  One year later, Movant signed a plea agreement, (CR Doc. 15), and pled guilty to a one-count Information charging Reentry of a Removed Alien, in violation of 8 U.S.C. §§ 1326(a) and (b).  (CR Doc. 16).

The terms of the plea agreement provide that the sentencing range would be determined by the federal sentencing guidelines and the actual sentence would be determined by the sentencing court after a presentence investigative report.  (CR Doc. 15 at 2).  Under the agreement, Movant was to receive a four-level downward adjustment unless he had a criminal history category of VI, in which case he would receive a two-level downward adjustment.  (*Id.* at 3-4).  The plea agreement explicitly stated that the "sentencing range will be based on the Final Adjusted Offense Level and the applicable Criminal History Category as determined by the U.S. Probation Office and the sentencing court."  (*Id.* at 5)  It also outlined the maximum statutory penalty for the offense, which is imprisonment for a period of not more than twenty years, a fine not to exceed $250,000, a term of supervised release of not more than three years, and a special penalty assessment of $100.00.  (*Id.*).

The plea agreement also contains a section entitled "Waiver of Appeal Rights and Post-Conviction Challenges to Sentence." (*Id.* at 6). This section states that the defendant

> knowingly waives the right to appeal this conviction and any sentence, including any fine, at or under the maximum statutory penalty authorized by law and imposed in conformity with this plea agreement. In addition, the defendant agrees to waive any collateral attack to the defendant's conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver."

(*Id.*). Movant signed the plea agreement, acknowledging that it had been read to him in the language he understood best and that he had discussed every part of it with his attorney. (*Id.* at 8). James Langell, Movant's attorney, also signed the agreement. (*Id.*).

At the plea hearing on November 28, 2013, United States Magistrate Judge Gregory B. Wormuth explained that the crime to which Movant was pleading guilty had a maximum punishment that could change based on Movant's criminal history, but that the maximum punishment was twenty years in jail, a $250,000 fine, and a $100 special penalty assessment. (CV Doc. 7-2 at 11). The Court also asked Movant whether he was satisfied with the advice and representation he had received, whether he had read his plea agreement from beginning to the end, and whether he understood each and every term of the agreement. (*Id.* at 11-13). Movant answered all the questions affirmatively. (*Id.*).

Mr. Langell summarized the terms of the agreement, explaining that Movant could withdraw the plea agreement if the district judge did not accept it completely, that Movant would receive a four-level downward departure in addition to an adjustment for acceptance of responsibility, that Movant would not ask for a sentence lower than the

applicable guideline range, and that he waived his right to appeal the decision of the district judge absent ineffective assistance of counsel.  (*Id.* at 13).  Movant affirmed that he understood those terms.  (*Id.* at 14).  The Court reiterated that Movant was giving up his right to appeal "in virtually all circumstances."  (*Id.*).  Movant again affirmed that he understood.  (*Id.*).

Next, the Court asked Movant whether he and Mr. Langell had discussed the estimated sentence.  (*Id.* at 14-15).  Movant answered that he had discussed this with his attorney.  (*Id.* at 15).  The Court then explained that the district judge would sentence Movant at his discretion and may give Movant a harsher sentence than what Mr. Langell had estimated.  (*Id.*).  Movant responded that he understood.  (*Id.*).  He then pled guilty to the charge of reentry of a removed alien.  (*Id.* at 17).

The United States Probation Office calculated Movant's Base Offense Level at 8, then adjusted it up by 16 levels because Movant was previously deported after being convicted of felony drug trafficking.  (CV Doc. 7 at 2).  The Offense level was reduced by five levels based on provisions in the plea agreement.  (*Id.*).  After all the adjustments, Movant's Total Offense Level was nineteen, with a Criminal History Category of VI.  (*Id.*).  The sentencing guideline range was 63-78 months.  (*Id.*).  On March 14, 2013, Movant was sentenced by the visiting judge to 63 months imprisonment, three years of supervised release, and a special assessment of $100.  (CV Doc. 7-3 at 11).  During the sentencing hearing, the Court noted that 63 months of imprisonment seemed "perhaps greater than necessary," but that "we're stuck . . . on this sentence range."  (*Id.* at 6-7).  Mr. Langell explained that he had anticipated

additional reductions of the offense level during negotiation of the plea agreement, but Movant's criminal history required that he be placed into category VI.  (*Id.*).

In his Motion, Movant alleges various grounds for relief.  (CV Doc. 1).  First, he alleges that the Court breached the plea agreement by failing to sentence him in accordance with the plea agreement.  (CV Doc. 2 at 7-9).  Next, he claims that the reassignment of his sentencing to a visiting judge violated Rule 25(b) of the Federal Rules of Criminal Procedure.  (CV Doc. 7 at 9-11).  Finally, he argues that he received ineffective assistance of counsel when his attorney:

a.  Failed to object to the "improperly calculated sentence;"

b.  Failed to object to the violation of Rule 25(b) of the Federal Rules of Criminal Procedure; and

c.  Failed to appeal.

(CV Doc. 2 at 2-6).  The United States contends that all of the claims fall within the waiver in the plea agreement and requests that the Court enforce this waiver.  (CV Doc. 7 at 4).  Alternatively, the United States argues that Movant's claims are meritless, and moves the Court to dismiss the Motion.  (*Id.*).

## II.  Analysis

### a.  *Movant's claims have been waived*

The United States argues that the plea agreement contains a waiver that covers all of Movant's claims.  (*Id.*).  As noted above, the plea agreement contains a section specifically outlining the waiver of the right to appeal and of most collateral attacks.  (CR Doc. 15 at 6).  Under this provision, Movant waived the right to appeal his conviction and any sentence that was less than the statutory maximum and imposed in conformity

5

with the plea agreement.  (*Id.*).  He also waived any collateral attack on his conviction pursuant to 28 U.S.C. § 2255 except on the issue of counsel's ineffective assistance in negotiating or entering the plea agreement or the waiver.  (*Id.*).

When considering whether to enforce a waiver as to any particular claims, courts review the waiver according to the analysis outlined in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).  First, the court considers whether the appeal falls within the scope of the waiver.  *Id.*  Next, the court evaluates whether the defendant knowingly and voluntarily waived his appellate rights.  *Id.*  Finally, the court considers whether enforcing the waiver would result in a miscarriage of justice.  *Id.*

i.  Scope of waiver

The Court notes that the claims before the Court were raised pursuant to 28 U.S.C. § 2255 and not on direct appeal of Movant's conviction and/or sentence. Therefore, on the face of the plea agreement, the only claims that Movant would be entitled to raise in this Motion are those that relate to receiving ineffective assistance of counsel in the negotiation of the plea agreement or the waiver.  Nonetheless, the Court reviews each claim individually to evaluate whether it falls within the scope of the waiver.  The court strictly construes waivers and resolves any ambiguities in the plea agreement against the United States when determining the waiver's scope.  See *Id.*

1. *Violation of Federal Rules Criminal Procedure*

Movant's claim that the reassignment of his sentencing to a visiting judge was a violation of the Federal Rules of Criminal Procedure is entirely unrelated to the negotiation of his plea agreement.  Similarly, his assertion that his counsel was ineffective because he failed to object to the reassignment of his sentencing to a visiting

6

judge is not related to the negotiation of the plea or the waiver.  Therefore, these two claims fall within the scope of the waiver.

### 2. *Breach of Plea Agreement*

The Court next considers Movant's claim that the Court breached the plea agreement by failing to sentence him in conformity with the plea agreement.  Under the terms of the plea agreement, Movant would be permitted to appeal a sentence that was not imposed in conformity with the plea agreement.  (*See* CR Doc. 15 at 6 where the agreement states that "defendant knowing waives the right to appeal . . . any sentence . . . imposed in conformity with this plea agreement").  However, the Motion before the Court is not an appeal, but a Motion pursuant to § 2255, and any collateral attack on Movant's sentence on this particular basis is precluded by the waiver.  To the extent that there is any ambiguity in the waiver and Movant should be permitted to raise this issue on collateral review, the Court finds that the claim is meritless.

In his Motion, Movant asserts that the Court breached the plea agreement because his sentence was not calculated based on a sentence in Paragraph 4(e) of the plea agreement.  (CV Doc. 2 at 7-9).  This paragraph of the agreement is as follows:

> **Unless the defendant previously has been convicted of a serious violent offense or has a Criminal History Category of VI, the Government agrees, pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., to a downward departure/adjustment to determine defendant's Final Adjusted Offense Level, as described in this subparagraph.**  The defendant's Base Offense Level (Column A) will be the sum of Offense Level 8 plus the sentencing guideline adjustment for defendant's most serious prior criminal conviction as determined by the sentencing court. Defendant's Final Adjusted Offense Level (Column B) will be the Base Offense Level minus a downward adjustment for acceptance of responsibility, and minus a four-level downward departure pursuant to USSG § 5K3.1

(CR Doc. 15 at 3) (emphasis added).  Movant implies that the Court breached this term by considering multiple prior convictions, not just the most serious conviction.  (CV Doc. 2 at 8-9).  However, that particular paragraph does not apply to Movant, as he has a Criminal History Category of VI.  In another paragraph, 4(g), the plea agreement provides that defendants with a Criminal History Category of VI will receive a two-level downward departure instead of a four-level downward departure.  (CR Doc. 15 at 4). Movant received this two-level downward departure and, therefore, the Court did not breach the plea agreement by failing to apply the terms of Paragraph 4(e).

### 3. *Ineffective Assistance of Counsel*

Movant's remaining two claims are that he received ineffective assistance of counsel when his attorney failed to object to the "erroneous calculation" of his Adjusted Offense Level and when his attorney failed to file an appeal.  (CV doc. 2 at 2-3, 5-6). Neither of these claims relates to the negotiation of the plea agreement or the waiver, and therefore, both fall within the scope of the waiver.  To the extent Movant's Reply raises an issue related to counsel's ineffective assistance of counsel in the negotiation of the plea agreement and waiver, these arguments are addressed below.

### ii.  Knowing and Voluntary

Courts look at two factors when considering whether an individual knowingly and voluntarily waived his appellate rights.  *Hahn*, 359 F.3d at 1325.  First, the court considers whether the language of the plea agreement makes clear that the individual entered the agreement knowingly and voluntarily.  *Id.*  Second, the court reviews the record from the plea hearing to determine whether the colloquy with the court required by Federal Rule of Criminal Procedure 11 was adequate.  *Id.*

In this case, the plea agreement states that Movant had reviewed all aspects of the case with his attorney and was satisfied with his attorney's representation. (CR Doc. 15 at 1). It also states that he "knowingly waive[d] his right to appeal this conviction and any sentence . . . ." (*Id.* at 6). Under a section entitled "Voluntary Plea," the agreement states that the plea was "freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement." (*Id.* at 7). Just above Movant's signature, the plea agreement states:

> This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. . . . No promises or inducements have been given to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement.

(CR Doc. 15 at 8)

At the plea hearing, Movant stated, under oath, that he was not being forced to plead guilty and that he had read and understood every term of his plea agreement. He also affirmed that he understood that he was giving up his right to appeal in almost all circumstances. When asked whether he understood that the district judge could impose a harsher sentence than his attorney told him he would receive, Movant responded that he understood.

In his Reply, Movant concedes that he was not forced to enter his guilty plea, but argues that "there was a fundamental misunderstanding . . . as to what he was actually pleading to in terms of sentence exposure." (CV Doc. 14 at 4). He asserts that he does not understand English like a native speaker and that he does not have training in the law. (*Id.*). The Court notes that Movant does not argue that he did not understand that he was waiving his appellate rights. Moreover, his assertions are not supported by

the record.  Movant specifically acknowledged that the plea agreement had been read to him in the language he understood best.  (CR Doc. 15 at 8).  Additionally, though an interpreter was available at the plea hearing and in fact provided interpretation for another defendant at the same time, Movant did not request to have an interpreter. (*See* CV Doc. 7-2 at 4).  As noted above, Movant acknowledged that he had carefully discussed each part of the plea agreement with his attorney when signing it, and again, under oath during the hearing, so his argument that he did not have the legal training necessary to understand the agreement is unpersuasive.

The record overwhelmingly shows that Movant knowingly and voluntarily entered into the plea agreement and waiver.

### iii.  Miscarriage of Justice

Enforcement of the waiver would be a miscarriage of justice where "(1) the district court relied on an impermissible factor such as race, (2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327.

None of these situations exist in this case.  Movant has not asserted that race was a factor in his case and his sentence of 63 months is below the statutory maximum of twenty years.  As discussed elsewhere in this analysis, movant did not receive ineffective assistance of counsel in connection with negotiating the plea agreement or the waiver.  Finally, Movant has made no argument that the waiver is otherwise unlawful, and the Court does not see any reason that the waiver should not be enforced.

10

For these reasons, the Court finds that all of Movant's claims have been waived.

      *b.*   *Ineffective Assistance of Counsel Related to Negotiation of the Plea Agreement*

Movant asserts that his attorney was ineffective because Mr. Langell incorrectly advised him regarding his potential sentence, thereby inducing him to sign the plea agreement.[2]  (CV Doc. 14 at 2-7).  Generally the Court does not consider arguments raised for the first time in a reply, but will consider it here in the interests of justice.

To establish ineffective assistance of counsel, Petitioner must satisfy a two-part test.  First, Petitioner must show that counsel's performance was deficient because it fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, Petitioner must show that counsel's deficient performance prejudiced him.  *Id.* at 687.   To demonstrate that counsel was ineffective, Petitioner must satisfy both prongs outlined in *Strickland*.  *See Id.* at 687.

In establishing that counsel's performance was deficient, "judicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The reasonableness of counsel's performance must be evaluated considering all the circumstances.  *Id.* at 688.

To demonstrate that counsel was ineffective, Petitioner must satisfy both prongs outlined in *Strickland.  See Strickland, 466 U.S.* at 687.  However, it is not necessary for a court to address both prongs if the Petitioner "makes an insufficient showing on one." *Id.* at 697; *see also Romano v. Gibson*, 239 F. 3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easiest

---

[2] Movant has not argued that Mr. Langell was ineffective in the negotiation of the waiver.

to resolve").

As noted above, Movant repeatedly affirmed that he understood the terms of his plea agreement. One of these terms was that he would be sentenced according to the federal sentencing guidelines after a presentence investigative report was prepared. At the plea hearing, Judge Wormuth explicitly explained that Mr. Langell's estimate of Movant's sentence was not necessarily the sentence that would be imposed. Movant stated that he understood that.

The Court acknowledges that at the time the plea agreement was signed, both Mr. Langell and Movant were under the impression that Movant would receive a shorter sentence than the one imposed. However, an attorney's "miscalculation or erroneous sentence estimation . . . is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993). Furthermore, Movant was fully informed that his sentence could be harsher than his attorney anticipated when he entered his guilty plea. His argument that he was induced to plead guilty solely on the basis of his attorney's estimation of his sentence is unpersuasive in light of the substantial evidence in the record that he fully understood that his sentencing range would be determined based on the presentence investigative report, as stated in the plea agreement and during the plea hearing.

For these reasons, Movant has not shown that his attorney's performance fell below an objective standard of reasonableness.

## III.    Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that Juan Davolos-Ponce's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a*

*Person in Federal Custody*, (CV Doc. 1), be **DENIED** and his Petition be **DISMISSED**

**WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF
> SERVICE** of a copy of these Proposed Findings and Recommended Disposition they
> may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. §
> 636(b)(1).  **A party must file any objections with the Clerk of the District Court
> within the fourteen-day period if that party wants to have appellate review of the
> proposed findings and recommended disposition.  If no objections are filed, no
> appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE